# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **AMERICAN CITY BUSINESS JOURNALS, INC.,** | : | |
| 120 West Morehead Street, | : | |
| Suite 400, | : | |
| Charlotte, North Carolina 28202, | : | |
| | : | |
| | : | |
| **BUSINESS JOURNALS OF OHIO INC.** | : | |
| d/b/a Dayton Business Journal | : | |
| 40 North Main Street | : | |
| Dayton, Ohio 45423 | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. _____ |
| **PAUL L. PARSHALL** | : | |
| 5521 Breshly Way | : | Judge: |
| Westerville, Ohio 43081-8213 | : | |
| | : | Jury Trial Demanded |
| **DAYTON BUSINESS JOURNAL, LLC** | : | |
| C/O Phillip L. Harmon, | : | |
| Attorney At Law, LLC | : | |
| 6649 N. High Street Suite 105 | : | |
| Worthington, OH 43085 | : | |
| | : | |
| Also serve at: | : | |
| | : | |
| 5521 Breshly Way | : | |
| Westerville, Ohio 430810-8213 | : | |
| | : | |
| Defendants. | : | |

## PETITION FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND TRADEMARK RIGHTS, CANCELLATION OF DEFENDANT'S SERVICE MARK AND CORPORATE REGISTRATIONS, DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs American City Business Journals, Inc. ("ACBJ") and Business Journals of Ohio

Inc. ("BJOI") d/b/a Dayton Business Journal (collectively "Plaintiffs"), bring this action against

Defendants Paul L. Parshall and Dayton Business Journal, LLC (hereinafter collectively the "Defendants") as follows:

## Nature of Action

1.      Plaintiffs seek a declaration that: (a) Plaintiffs are the sole owners of trademark rights associated with the trademark DAYTON BUSINESS JOURNAL; (b) to the extent Defendants ever held any rights in a "Dayton Business Journal" trademark or service mark, Defendant abandoned those rights more than thirty years ago; (c) Plaintiffs' use of the trademark DAYTON BUSINESS JOURNAL does not infringe upon any rights of Defendants; and (d) Defendants' recent registration of a service mark, corporate name and tradename all claiming use of "Dayton Business Journal," constitute unfair competition, infringement of Plaintiffs' trademark rights and are otherwise invalid and should be cancelled.

2.      Plaintiffs further seek judgment pursuant to Ohio Rev. Code §1329.08, ordering cancellation of Defendants' recent registrations with the Ohio Secretary of State of a "Dayton Business Journal" trademark, the corporate name "Dayton Business Journal, LLC" and the trade name "Dayton Business Journal."

3.      Plaintiffs further seek damages and attorneys' fees and the costs of this action under Ohio Rev. Code §1329.64 for Defendants' procurement of State of Ohio service mark registrations through false or fraudulent representations and other improper conduct set forth herein.

4.      In addition or in the alternative, Plaintiffs seek injunctive relief, damages, attorneys' fees and the cost of this action under the Lanham Act, 15 U.S.C. §1114, 15 U.S.C. §§1125(a), 1116, and 1117 for Defendants' infringement of Plaintiffs' trademark rights in the DAYTON BUSINESS JOURNAL mark.

## Parties

5.      The Plaintiff ACBJ is a Delaware corporation, having its corporate headquarters located at 120 West Morehead Street, Charlotte, North Carolina 28202.

6.      The Plaintiff BJOI is an Ohio corporation, first incorporated on September 23, 1999, with offices at 40 North Main Street, Dayton, Ohio 45423.  Plaintiff is qualified to do business, and is doing business, in the State of Ohio and in this judicial district.  Plaintiff BJOI is wholly owned by Plaintiff ACBJ.

7.      On information and belief, Defendant Paul L. Parshall ("Mr. Parshall") is an individual residing in Worthington, Ohio.

8.      Defendant Dayton Business Journal, LLC is an Ohio limited liability company that Mr. Parshall registered with Ohio Secretary of State on June 28, 2016, purportedly having a principal place of business at 5521 Breshly Way, Westerville, Ohio.

### Jurisdiction and Venue

9.      The Court has jurisdiction over this action pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201(a) and 2202, as well as under 28 U.S.C. §§ 1331, 1332, 1367(a) and 1338(a) and (b), and the Lanham Act, 15 U.S.C. §§ 1116, 1117, 1121 and 1125.

10.     The Court has personal jurisdiction over the Defendants because, on information and belief, the Defendants reside in and are registered to do business in the State of Ohio.

11.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(a).

**Facts**

**Defendants' Cancelled Trademark**

12.     The Plaintiffs repeat the allegations contained in paragraphs 1 through 11 of this Complaint, as if fully set forth herein.

13.     On December 2, 1981, Defendant Paul Parshall ("Mr. Parshall") registered "Dayton Business Journal" as a trademark with the Ohio Secretary of State (the "1981 Trademark").  According to the registration application for the 1981 Trademark, Mr. Parshall claimed to have published a newspaper under this name and further claimed the date of first use of the 1981 Trademark was November 30, 1980.

14.     Upon information and belief, Mr. Parshall ceased use of the 1981 Trademark in the mid-1980s and has not used "Dayton Business Journal" as a trademark or service mark in any way for more than thirty years.

15.     Mr. Parshall's 1981 Trademark expired by operation of law on December 2, 1991 and was cancelled by the Ohio Secretary of State by operation of law on December 26, 1991.

**Plaintiffs' Trademark**

16.     In 1996, ACBJ acquired a business operating under the name "Business News" and sometime shortly thereafter began publishing a business journal in the Dayton, Ohio area.

17.     On September 23, 1999, ACBJ filed Articles of Incorporation for "Business Journals of Ohio Inc.," an Ohio corporation, organized to own and operate ACBJ's business news journals located in Dayton and in other municipalities in Ohio.

18.     On December 29, 2000, BJOI changed the name of its "Business News" publication in Dayton to the "Dayton Business Journal."  A true and accurate copy of the front page of BJOI's

first issue published using the Dayton Business Journal trade name and trademark is attached hereto as Exhibit 1.

19.     Prior to publishing under the "Dayton Business Journal," Plaintiffs searched all available public records and found no evidence of any other entity actively using Dayton Business Journal as a trade name or trademark.

20.     On December 25, 2001, ACBJ registered the trademark "DAYTON BUSINESS JOURNAL" on the U.S. Patent and Trademark Office's Supplemental Register, Serial No. 76/150,177, Registration No. 2,523,713 ("DBJ Mark 1").  As stated on the registration certificate, DBJ Mark 1 has been in use in connection with "weekly business newspapers" since at least as early as December 29, 2000.  DBJ Mark 1 remains an active trademark owned by ACBJ.   A copy of the certificate of registration of DBJ Mark 1 is attached as Exhibit 2.

21.     On April 14, 2015, ACBJ registered the following design mark containing the term "Dayton Business Journal" on the Principal Register of the U.S. Patent and Trademark Office, as Serial No. 86/051,026, Registration No. 4,718,872:



("DBJ Mark 2").  As stated on the registration certificate, DBJ Mark 2 has been in use in connection with the following goods and services since at least as early as February 7, 2014: "magazines, newspapers, journals all on the subject of business in Dayton, Ohio and vicinity"; and "Online publications, namely, magazines, newsletters, newspapers and journals all on the subject of business; Non-downloadable electronic publications in the nature of magazines, newsletters, newspapers and journals all on the subject of business in Dayton, Ohio and vicinity."  DBJ Mark

5

2 remains an active trademark owned by ACBJ. The federal registration of DBJ Mark 2 is prima facie evidence of the validity of DBJ Mark 2, of Plaintiffs' ownership thereof, and of Plaintiffs' nationwide exclusive right to use DBJ Mark 2 in connection with the goods and services as set forth in the registration, pursuant to 15 U.S.C. §1057(b) and 15 U.S.C. §1115(a). The registration of DBJ Mark 2 also provides constructive notice of Plaintiffs' claim of ownership in the mark under 15 U.S.C. 1072. A copy of the certificate of registration for DBJ Mark 2 is attached as Exhibit 3.

22. For the last seventeen and a half years, Plaintiffs have been operating and publishing the DAYTON BUSINESS JOURNAL newspaper without any objection or notice of any claim of infringement from Defendants.

23. Plaintiffs' use of the DAYTON BUSINESS JOURNAL mark has become famous as it is widely recognized as *the* source for business news in the Dayton, Ohio area, publishing business news in both print and electronic formats.

24. Plaintiffs have thousands of paid subscribers to the DAYTON BUSINESS JOURNAL print edition newspaper in thirty Ohio counties and twenty-eight states, as well as thousands of followers on social media. Since at least as early as December 29, 2000, Plaintiffs operated a website under the name, DAYTON BUSINESS JOURNAL. The Plaintiffs' DAYTON BUSINESS JOURNAL website has steadily increased in popularity and use by the public, averaging more than 10 million views annually over the last three years. Plaintiffs also have many well-established and widely recognized signature events offered under the DAYTON BUSINESS JOURNAL mark, including "Forty Under Forty," "Book of Lists" "Fast 50," "Best Places to Work," "Business of the Year" and the "Dayton Business Journal Manufacturing Awards." Thus, consumers associate the DAYTON BUSINESS JOURNAL mark not only with a well-established

6

and longtime source of business news in the Dayton, Ohio area, but also as the source of respected signature events celebrating businesses in the Dayton, Ohio area.

### Defendants' Fraudulent Trademark Registration

25.     On May 18, 2015, Mr. Parshall filed an application for registration with the Ohio Secretary of State, seeking registration of "Dayton Business Journal" as a service mark, despite not currently using any such mark and not using any such mark for more than thirty years.

26.     In his application for Ohio service mark registration for "Dayton Business Journal," Mr. Parshall stated that the goods or services used in connection with the mark are "publishing and advertising," and that the mode or manner in which the mark is used on or in connection with the goods or services is "name of newspaper." A copy of Mr. Parshall's application for Ohio service mark registration is attached as Exhibit 4.

27.     In his application for Ohio service mark registration, Mr. Parshall checked the box on the application indicating that he "is" the current owner of a concurrent trademark registration in the United States Patent and Trademark Office.  This representation is false and fraudulent. Plaintiffs own the only trademark registrations for DAYTON BUSINESS JOURNAL issued by the United States Patent and Trademark Office.

28.     In his application for Ohio service mark registration for "Dayton Business Journal," Mr. Parshall represented that:

  a.     he is the owner of the applied-for mark, "Dayton Business Journal";

  b.     the applied-for mark "Dayton Business Journal" is "in use";

  c.     "no other person has the right to use the mark in Ohio either in the identical form of the mark, or in near resemblance to the mark, as to be likely, when used on or in

connection with the goods or services of another person, to cause confusion or mistake or to deceive"; and

d. "no other person has a registration or a pending intent to use application of the same or confusingly similar mark in the United States Patent and Trademark office for the same or similar goods or services."

29. Each of these representations is false or fraudulent. Mr. Parshall's applied-for "Dayton Business Journal" mark was not in use when he filed his Ohio service mark application and had not been in use for more than thirty years. Mr. Parshall knew or should have known that Plaintiffs had federally registered DAYTON BUSINESS JOURNAL marks, that Plaintiffs had continuously and exclusively used the DAYTON BUSINESS JOURNAL mark since at least as early as December 29, 2000, that the DAYTON BUSINESS JOURNAL word mark and design mark were in use on the date that Mr. Parshall filed his Ohio service mark application, and that Plaintiffs' DAYTON BUSINESS JOURNAL marks remain in current use today.

30. Mr. Parshall also attached a specimen to his Ohio service mark application indicating that the specimen shows the mark "in use." The specimen Mr. Parshall attached to the application was not a sample of current use, but a sample of his purported use of the mark in the early 1980s. Mr. Parshall's representation that this sample shows the mark "in use" is also a false or fraudulent representation.

31. Based upon Mr. Parshall's false and fraudulent representations, Mr. Parshall is now registered as the owner of an Ohio service mark for "Dayton Business Journal" in the Ohio Secretary of State records, Entity No. 2395701, Document No. 201514101626 ("Parshall's 2015 Mark"). A copy of the Certificate of Registration for Parshall's 2015 Mark is attached hereto as Exhibit 5.

**Defendants' Improper Corporate and Trade Name Registrations**

32.     On June 28, 2016, Mr. Parshall filed Articles of Organization with the Ohio Secretary of State, establishing a new limited liability company named "Dayton Business Journal, LLC." A copy of Parshall's Articles of Organization for Dayton Business Journal, LLC is attached hereto as Exhibit 6.

33.     Mr. Parshall did not register Dayton Business Journal, LLC to operate a legitimate business in the State of Ohio. Rather, Dayton Business Journal, LLC was established as part of Mr. Parshall's plan to improperly usurp or fraudulently stake a claim to Plaintiffs' registered, longstanding, well-established DAYTON BUSINESS JOURNAL mark.

34.     Mr. Parshall's Articles of Organization for Dayton Business Journal, LLC expressly state the following purpose:

> [t]o conduct business news publishing and advertising in the State of Ohio pursuant to an assignment of all common law rights to use the name "Dayton Business Journal" from Paul L. Parshall, such rights having originated on or before 12/01/1981 by virtue of their first use in commerce on or before that date by Mr. Parshall, and by assignment of all rights to use the name "Dayton Business Journal" per Ohio Service Mark Reg. No. 2395701 from Mr. Parshall to this entity.

35.     On August 3, 2016, Dayton Business Journal, LLC filed documents with the Ohio Secretary of State purportedly establishing ownership of "Dayton Business Journal" as a registered trade name (the "LLC Tradename"). A copy of Parshall's Dayton Business Journal Tradename Registration is attached as Exhibit 7. Mr. Parshall did not register the LLC Tradename to operate a legitimate business under the name "Dayton Business Journal." Mr. Parshall does not operate and has not operated any such business for more than thirty years. Mr. Parshall registered the LLC Tradename as part of Mr. Parshall's plan to improperly usurp or fraudulently stake a claim to Plaintiffs' registered, longstanding, well-established DAYTON BUSINESS JOURNAL mark.

**Defendants' Unlawful Threats and Demands**

36.     Upon registering Parshall's 2015 Mark, Dayton Business Journal, LLC and the LLC Tradename, Mr. Parshall sent a letter to Plaintiff on August 12, 2015, which demanded Plaintiffs immediately cease use of Plaintiffs' DAYTON BUSINESS JOURNAL marks.  A copy of this letter is attached hereto as Exhibit 8 (without exhibits).  In response, Plaintiffs sent Mr. Parshall a letter through counsel dated August 24, 2015, advising Mr. Parshall of Plaintiffs' federal trademark registrations and longstanding, well-established use of the DAYTON BUSINESS JOURNAL marks.  A copy of this letter is attached hereto as Exhibit 9.

37.     For almost a year and a half, Mr. Parshall did not respond Plaintiffs' letter. Plaintiffs assumed Mr. Parshall had correctly concluded he had no right to object to Plaintiffs' use of their DAYTON BUSINESS JOURNAL marks.  However, on February 7, 2017, Mr. Parshall sent a letter to Plaintiffs making similar demands, this time through legal counsel.  In response, Plaintiffs sent a letter to Mr. Parshall's attorney on February 15, 2017, again advising Mr. Parshall of Plaintiffs' federal registrations and seventeen years of use of their DAYTON BUSINESS JOURNAL marks.  Plaintiffs further demanded that Mr. Parshall provide evidence of Defendants' continuous and current use of a "Dayton Business Journal" trademark.  Copies of Defendants' February 7, 2017 letter and Plaintiffs' February 15, 2017 letter (without exhibits) are attached hereto as Exhibits 10 and 11.

38.     Defendants never provided Plaintiffs with evidence of current use of their purported mark.  Rather, Defendants provided only a photocopy of the same purported specimen that they supplied to the Ohio Secretary of State, which appears to be a copy of one page from a newspaper from the early 1980s.  This photocopy provided by Defendants do not prove any use of Defendants' purported mark after the early 1980s, much less current use.

39.     Ultimately, Mr. Parshall offered, through his attorney, to withdraw his improper claims to ownership of a "Dayton Business Journal" mark, but still demanded Plaintiffs pay him money in return for withdrawing his demands.

40.     Mr. Parshall has a long history of registering trademarks that are already owned by existing, well-established businesses.  A few examples of trademarks registered by Mr. Parshall include "Chicago Bears Beer," "Chicago Blackhawks Brewing Co.," "New York Giants Beer," "New York Jets Beer," "Charlotte Business Journal", "Green Bay Packers Brewing," "LSU Tigers Beer," and "New York Yankees Beer."  A full list of one hundred and eight trademarks registered and purportedly owned by Mr. Parshall in ten states is attached hereto as Exhibit 12.

## COUNT I

### Declaratory Judgment Establishing Trademark Rights

41.     Plaintiffs repeat the allegations contained in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42.     A real and actual dispute, case, and/or controversy exists between Plaintiffs and Defendants regarding the legal rights of the parties and their respective competing claims to ownership, registration and use of trademarks or service marks associated with "Dayton Business Journal."  Plaintiffs and Defendants have adverse and antagonistic interests in the subject matter of the dispute, case, and/or controversy.

43.     Defendants are not currently using the trademark or service mark "Dayton Business Journal" in commerce and have not used any such trademark or service mark for more than thirty years.  To the extent Defendants ever had any trademark rights associated with "Dayton Business Journal," any and all such rights have been abandoned.

44.     Defendants' registration of Parshall's 2015 Mark was legally improper and based upon false and fraudulent information provided by Mr. Parshall.  Defendants' registration of Dayton Business Journal, LLC and the LLC tradename was also improper and filed solely for the purpose of furthering Defendants' plan to improperly usurp Plaintiffs' trademark rights.

45.     Plaintiffs seek a declaratory judgment that: (a) Plaintiffs are the sole owners of trademark rights associated with the trademark DAYTON BUSINESS JOURNAL; (b) to the extent Defendants ever held any rights in a "Dayton Business Journal" trademark or service mark, Defendant abandoned those rights more than thirty years ago; (c) Plaintiffs' use of the trademark DAYTON BUSINESS JOURNAL does not infringe upon any rights of Defendants; and (d) Defendants' recent registrations of a service mark, corporate name and tradename all claiming use of "Dayton Business Journal" constitute unfair competition, infringement of Plaintiffs' trademark rights and are otherwise invalid and should be cancelled.

**COUNT II**
**Fraudulent Filing or Registration–Damages**
**(Ohio Rev. Code §1329.64)**

46.     Plaintiffs repeat the allegations contained in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47.     Mr. Parshall knowingly made false or fraudulent representations or a declaration in writing or concealment of fact within his application to procure the filing or registration of Parshall's 2015 Mark with the office of the Ohio Secretary of State.

48.     Mr. Parshall had a duty to provide true and accurate information to the Ohio Secretary of State in connection with his application for the registration of Parshall's 2015 Mark.

49.     Mr. Parshall's misrepresentations in his application for registration were intended to mislead and to improperly usurp Plaintiffs' trademark rights.

12

50.     The Ohio Secretary of State justifiably relied upon Mr. Parshall's false or fraudulent representations in connection with the registration of Parshall's 2015 Mark and Parshall's false or fraudulent representations were material to the registration of Parshall's 2015 Mark.

51.     Plaintiffs have sustained damages proximately caused by Mr. Parshall's filing or registration of Parshall's 2015 Mark, including but not limited to Plaintiffs' attorneys' fees associated with Defendants' invalid registrations and improper demands to cease and desist and with the filing and prosecution of this lawsuit.

52.     Plaintiffs are entitled to damages, including but not limited to attorneys' fees, pursuant to Ohio Rev. Code §1329.64, and other applicable law.

### COUNT III

**Cancellation of Ohio Service Mark, Corporate and Trade Name Registrations
(Ohio Rev. Code §1329.08)**

53.     Plaintiffs repeat the allegations contained in paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54.     Defendants abandoned any and all rights to any trademark, service mark or trade name in connection with "Dayton Business Journal."

55.     Plaintiffs are the sole owners of all state and federal trademark rights in connection with the DAYTON BUSINESS JOURNAL mark.

56.     Defendants' registration of Parshall's 2015 Mark as a service mark with the Ohio Secretary of State was based upon false and fraudulent information and Parshall's 2015 Mark is invalid and should be cancelled.

57.     Defendants' registrations of the corporate name "Dayton Business Journal, LLC" and the LLC Tradename with the Ohio Secretary of State were not made with any intent to operate

any legitimate business, but to support Defendants' improper and fraudulent efforts to usurp and stake a claim in Plaintiffs' well-established rights in the DAYTON BUSINESS JOURNAL mark.

58. Plaintiffs are entitled to a judgment pursuant to Ohio Rev. Code §1329.08, ordering the Ohio Secretary of State to cancel Defendants' registrations of Parshall's 2015 Mark, the Dayton Business Journal, LLC corporate name, and the LLC Tradename.

**COUNT IV**
**Federal Trademark Infringement**
**(Lanham Act – 15 U.S.C. §1114)**
**(Pled both in addition to or in the alternative to Counts I-III)**

59. Plaintiffs repeat the allegations contained in paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60. Defendants' Ohio application for registration of Parshall's 2015 Mark claims the mark is "in use." Despite Plaintiffs' requests, Defendants have failed to produce any evidence that Defendants are using "Dayton Business Journal" in commerce. Nonetheless, to the extent Defendants are now using "Dayton Business Journal" in commerce, any such use is without authorization or consent from Plaintiffs and creates a likelihood of confusion, mistake or deception among consumers. Such consumers will conclude that Defendants are somehow affiliated with Plaintiffs, or that Plaintiffs have authorized or licensed Defendants to sell goods and services sold by Plaintiffs, which is false.

61. To the extent Defendants are using "Dayton Business Journal" in commerce, such use:

(a) constitutes infringement of DBJ Mark 1 and DBJ Mark 2 under 15 U.S.C. § 1114(1);

(b) has caused and will continue to cause Plaintiffs to suffer immediate and irreparable harm;

14

(c)     is intended to and will divert to Defendants the benefit of the business reputation and goodwill Plaintiff has established in DBJ Mark 1 and DBJ Mark 2;

(d)     deprives Plaintiffs of its right to control the usage and goodwill relating to DBJ Mark 1 and DBJ Mark 2 and Plaintiff's reputation among consumers;

(e)     will likely continue unless enjoined by this Court.

62.     As a direct and proximate result of Plaintiff's unlawful acts, Plaintiffs have suffered damages in an amount to be determined at trial but in excess of $75,000.00.

63.     Defendants' actions complained of herein have been and continue to be willful, intentional and deliberate, making this an exceptional case and entitling Plaintiffs to attorneys' fees and damages in an amount three times greater than actual damages pursuant to 15 U.S.C. 1117.

64.     An award of monetary damages alone cannot fully compensate Plaintiffs for its injuries, and Plaintiffs lacks an adequate remedy at law.

65.     Plaintiff is entitled to a preliminary and permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## COUNT IV

### Federal Trademark Infringement, False Designation of Origin and Unfair Competition
### (Lanham Act - 15 U.S.C. §1125(a))
### (Pled both in addition to or in the alternative to Counts I-III)

66.     Plaintiffs repeat the allegations contained in Paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67.     To the extent Defendants are using "Dayton Business Journal" in commerce, any such use is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association with the Plaintiffs' trademark DAYTON BUSINESS JOURNAL or cause confusion as to the origin, sponsorship, or approval of Plaintiffs' goods, services, or commercial activities.

68.     Defendants' application for registration of Parshall's 2015 Mark includes false or misleading misrepresentations of fact that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association with the Plaintiffs' DAYTON BUSINESS JOURNAL mark, or cause confusion as to the origin, sponsorship, or approval of Plaintiffs' goods, services, or commercial activities.

69.     Plaintiffs have established goodwill in DBJ Mark 1 and DBJ Mark 2 and will suffer immediate and irreparable harm by Defendants' unlawful conduct.

70.     Defendants' conduct constitutes a deliberate and malicious attempt to compete unfairly with Plaintiffs by claiming rights Defendants do not have in the DAYTON BUSINESS JOURNAL mark and to wrongfully and unlawfully force Plaintiffs to stop using Plaintiffs' well-established DAYTON BUSINESS JOURNAL marks so that Defendants can start a publication that competes with Plaintiffs' publication and that consumers will mistakenly believe is sponsored by, affiliated with or endorsed by Plaintiffs.

71.     As a direct and proximate result of Defendants' wrongful and fraudulent conduct, Plaintiffs have suffered and are suffering damages in an amount to be determined at trial, but in excess of $75,000.00.

72.     Defendants' actions complained of herein have been and continue to be willful, intentional, deliberate, and wanton, making this an exceptional case and entitling Plaintiffs to attorneys' fees and damages in an amount three times greater than actual damages pursuant to the Lanham Act, 15 U.S.C. § 1117.

73.     Defendants' actions complained of herein have caused and are likely to cause further irreparable injury to Plaintiffs.  The injury to Plaintiffs is ongoing and irreparable.  An award of monetary damages alone cannot fully compensate Plaintiffs for their injuries, and Plaintiffs lack an adequate remedy at law.

74.     Defendants' wrongful and fraudulent conduct will likely continue unless enjoined by this Court.

75.     Plaintiffs are entitled to a preliminary and permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages, treble damages, costs, and attorneys' fees.  *See e.g.,* 15 U.S.C. §§1116 and 1117.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment as follow:

A.     Declaratory judgment that: (a) Plaintiffs are the sole owners of trademark rights associated with the trademark DAYTON BUSINESS JOURNAL; (b) to the extent Defendants ever held any rights in a "Dayton Business Journal" trademark or service mark, Defendant abandoned those rights more than thirty years ago; (c) Plaintiffs' use of the trademark DAYTON

17

BUSINESS JOURNAL does not infringe upon any rights of Defendants; and (d) Defendants' recent registrations of a service mark, corporate name and tradename all claiming use of "Dayton Business Journal" constitute unfair competition, infringement of Plaintiffs' trademark rights and are otherwise invalid and should be cancelled;

B. Judgment ordering the Secretary of State to cancel the Defendants' registrations of Parshall's 2015 Mark, the corporate name Dayton Business Journal, LLC and the LLC Tradename;

C. Judgment for money damages and attorneys' fees pursuant to Ohio Rev. Code §1329.64, the Lanham Act and other applicable law;

D. Judgment that Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or privity with them, or any of them, be preliminarily and permanently enjoined from seeking to register as a trademark, trade name, corporate name or domain name, the DAYTON BUSINESS JOURNAL mark or any confusingly similar marks;

E. Judgment that Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or privity with them, or any of them, be preliminarily and permanently enjoined from using the DAYTON BUSINESS JOURNAL mark or any confusingly similar marks in any manner on any goods or services or in promoting or advertising any goods or services, or otherwise engaging in any acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Plaintiffs with Defendants;

F. Judgment that Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or privity with them, or any of them, be preliminarily and permanently enjoined from using the DAYTON BUSINESS JOURNAL mark or any confusingly similar marks in any manner on any goods or services or in promoting or advertising any goods or

18

services, or otherwise engaging in any acts or conduct that would infringe or falsely designate the origin of the DAYTON BUSINESS JOURNAL mark;

      G.     Judgment that this Court deems this case to be exceptional;

      H.     Judgment that Defendants pay compensatory damages to Plaintiffs as a result of Defendants' acts of infringement, false designation of origin and unfair competition, together with interests and costs, and that such damages be trebled because of the willful acts described above, which acts were committed in knowing disregard of Plaintiffs' rights;

      I.     Judgment that Defendants pay Plaintiffs' attorneys' fees, together with expenses and costs of this suit; and

      J.     Judgment that Plaintiffs have such other and further relief as this Court deems necessary, just or proper.

Respectfully submitted,


/s/ Kevin T. Shook
Kevin T. Shook (0073718) (Trial Attorney)
Monica L. Dias (0073617)
Samantha M. Quimby (0081968)
Kathryn A. Comella (0089183)
FROST BROWN TODD LLC
One Columbus, Suite 2300
10 West Broad Street
Columbus, Ohio 43215-3484
Direct: (614) 559-7214
Ph:  (614) 464-1211
Fax:  (614) 464-1737
kshook@fbtlaw.com
mdias@fbtlaw.com
squimby@fbtlaw.com
kcomella@fbtlaw.com
[Pro Hac Vice to be filed]

*Attorneys for Plaintiffs American City Business Journals, Inc. and Business Journals of Ohio Inc.*

19

0000000.0001541   4819-0596-6154v5